IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

—————————————

BEYOND NUCLEAR, et al.,

     Plaintiffs,

v.

UNITED STATES NUCLEAR
REGULATORY COMMISSION, et al.,

     Defendants.

Case No.: 1:25-CV-01463-HYJ-SJB

Hon. Hala Y. Jarbou

## BRIEF IN SUPPORT OF HOLTEC DECOMMISSIONING INTERNATIONAL, LLC'S MOTION TO DISMISS

## ORAL ARGUMENT REQUESTED

## INTRODUCTION

This action arises from HDI's plans to restart active power operations at Palisades Nuclear Plant ("Palisades") in Covert, Michigan, which ceased operations in 2022.  To restart the reactor, the Nuclear Regulatory Commission ("NRC" or "Commission") must allow HDI to rescind certifications of Palisades' prior owner/operator that the reactor permanently ceased operations and approve a number of license amendments.  Consequently, HDI has initiated several administrative proceedings before the NRC, in which Plaintiffs Beyond Nuclear, Don't Waste Michigan, and Michigan Safe Energy filed petitions challenging the propriety of the NRC issuing requested license amendments.  A crucial step in the overall license amendment process was obtaining an exemption from 10 CFR § 50.82(a)(2), which prohibits operation of a nuclear plant, like Palisades, for which certifications of permanent cessation and defueling have been filed.  Plaintiffs brought this action against the Commission and HDI, challenging the exemption under the Administrative Procedures Act ("APA").

But Plaintiffs have a problem.  The Administrative Orders Review Act (commonly referred to as the Hobbs Act), grants exclusive jurisdiction to the federal courts of appeals over challenges to "all final orders" of the NRC entered in "any proceeding . . .  for the granting, suspending, revoking, or amending of any license."  *See* 28 U.S.C. § 2342(4); 42 U.S.C. §§ 2239(a)(1), (b)(1). And, according to the U.S. Supreme Court, that includes "orders resolving issues preliminary or ancillary to the core issue in a [licensing] proceeding," including the issuance of an exemption from NRC's regulations.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).

The exemption Plaintiffs seek to challenge falls within the category of orders reviewable only by the courts of appeals.  As discussed in more detail below, this is apparent in three ways. First, the Complaint itself acknowledges that the exemption is "preliminary or ancillary" to a

licensing issue by alleging that it is a prerequisite to the license amendments that would allow Palisades to resume power operations.  Second, Plaintiffs filed a petition at the NRC *in the license amendment proceeding itself* raising the same issues regarding the exemption as they raise in the Complaint.  Finally, the Atomic Safety and Licensing Board ("ALSB" or "Board") empaneled by the Commission to address Plaintiffs' petition entered an order holding that the exemption is within the scope of the license amendment proceeding.  The order denying Plaintiffs a hearing on the exemption request and several license amendments is currently on appeal to the Commission.

Given Plaintiffs' pleadings (both in this Court and at the Commission) and the Board's order, the exemption is very much at issue in a "proceeding . . . for the . . . amending of any license." At the very least, it is "preliminary or ancillary" to the license amendment issues.  Either way, this Court lacks subject-matter jurisdiction, and Plaintiffs' recourse, if any, is in the Court of Appeals.

## **BACKGROUND**

Under the Atomic Energy Act of 1954 ("AEA"), the NRC has authority over, among other things, the construction and operation of commercial nuclear plants.[1]  42 U.S.C. §§ 2201, 2131-33.  The NRC has, in turn, promulgated extensive regulations governing the issuance of licenses to operate nuclear power plants.  *See* 10 CFR part 50.

One such plant is Palisades.  The Palisades plant began power operations in 1971. ECF No. 1, PageID.12 ¶ 35.  In May 2022, Entergy, which owned Palisades at the time, closed the plant and put it into decommissioning status.  *Id.*  As part of that process, Entergy filed certifications of

---

[1] The Atomic Energy Act of 1954 originally granted this responsibility to the Atomic Energy Commission. The Energy Reorganization Act of 1974 established the NRC as an independent agency and transferred "all the licensing and related regulatory functions of the Atomic Energy Commission" to the NRC. *See* 42 U.S.C. § 5841(a)(1).

cessation of operations and defueling under 10 CFR § 50.82(a)(1). *Id.* As a result of those certifications, 10 CFR § 50.82(a)(2) prohibits any power operations at Palisades. In May 2022, an affiliate of HDI acquired Palisades. *Id.* at PageID.2 ¶ 5.[2]

On September 28, 2023, HDI filed a request for a one-time exemption from 10 CFR § 50.82(a)(2) to allow HDI to withdraw the certifications of permanent shutdown and defueling of Palisades in order to ultimately return Palisades to active power operations. ECF No. 1, PageID.12 ¶ 34; *see* Request for Exemption from Certain Termination of License Requirements of 10 CFR 50.82, ML23271A140.[3]  After some procedural filings,[4] and in response to NRC's Federal

---

[2] While Plaintiffs allege that HDI acquired Palisades, that's not completely accurate. A related entity called Holtec Palisades, LLC is the owner, and HDI was the operator during decommissioning. HDI filed the NRC requests at issue on behalf of Holtec Palisades, LLC. Since that time, NRC approved the transfer of operational authority from HDI to its affiliate, Palisades Energy, LLC, which is the current NRC licensed operator of Palisades. The distinction, however, is irrelevant to the arguments herein.

[3] The documents filed at the NRC are available on the Agencywide Documents Access and Management System (ADAMS), the official recordkeeping system for the NRC. *See* https://www.nrc.gov/reading-rm/adams.  ADAMS assigns each document a unique identifier known as an accession number or "ML number." For the Court's convenience, this brief provides hyperlinks, via the ML number, to the NRC's ADAMS system for each cited document.

[4] The Secretary of the Commission denied Plaintiffs' initial petition to intervene, which was not filed in a license amendment docket, because, "[a]s a general matter, exemption requests do not give rise to a hearing opportunity." *See* Order, ML23352A325.  But, the Secretary continued, "when an exemption request is inextricably intertwined with a licensing action triggering the opportunity to request a hearing, the hearing may encompass the exemption request as well." *Id.* at 2 (footnote citations omitted).  And since HDI "has separately filed a license amendment request and a license transfer application for Palisades, under the agency's procedures, Petitioners will have an opportunity to petition to intervene and request a hearing on these and any other future license transfers and license amendments." *Id.* at 3.  In response to a request from Plaintiffs, the Secretary later clarified that while the exemption request "did not itself create . . . [a] hearing opportunity," an exemption request that is "inextricably intertwined with a licensing action" may be considered in the license amendment proceeding. *See* Order, ML24270A263 (the "Clarifying Order").  The Clarifying Order further noted that the Commission had not "categorically exclude[d] or predetermine[d] the admissibility of contentions . . ., including contentions relating to an exemption request," and that the presiding officer in the license amendment proceeding would make such determinations. *Id.* at 3.

Register notice[5] providing an opportunity to request a hearing on certain of HDI's license amendment requests, Plaintiffs filed a Petition to Intervene and Request for Adjudicatory Hearing in the NRC adjudicatory docket established to address those license amendments (the "License Amendment Proceeding").  *See* Petition to Intervene and Request for Adjudicatory Hearing, ML24284A364 (the "Petition").  Plaintiffs challenged HDI's exemption request in that Petition, stating that "the NRC's consideration of [HDI's] Request for Exemption in their estimation comprises a licensing-related act that comprises a proceeding pursuant to [10 CFR] § 2.309 [i.e., NRC's procedural rule governing admission of arguments for hearing]." *Id.* at 28.  Plaintiffs raised in their Petition the very same arguments as the Complaint as to why the exemption should not be granted, including reliance on the same declaration of Arnold Gundersen, a nuclear engineer.  *See id.* at 30-40; ECF No. 2-2, PageID.91-152.

In opposing the Petition, HDI argued that Plaintiffs had not carried their burden to show that the exemption request is "inextricably intertwined" with the license amendment requests and therefore is outside the scope of the proceeding.  *See* Applicants' Answer, ML24309A302.  Rather, Plaintiffs had simply argued that the exemption request was itself a licensing action (not that it was inextricably intertwined with one).  *Id.* at 42.  NRC Staff, however, did make that argument, stating that the exemption request "is inextricably intertwined to the restart-related amendment requests, and therefore, can be challenged through the filing of contentions in the license amendment proceeding."  *See* NRC Staff's Answer, ML24309A302 at 31.  NRC Staff pointed out that "the NRC may not make the findings to issue these [restart-related license] amendment requests without the Exemption Request being granted."  *Id.*

_____

5 *See* 89 Fed. Reg. 64486  (Aug 7, 2024).

In a reply to these two answers, Plaintiffs reversed course.  *See* Combined Reply to Answers, ML24317A201.  They claimed to have raised the issue only because the Clarifying Order "inferred that the exception request was so closely intertwined with the license amendment requests that it must be included as a contention in this proceeding."  *Id.* at 11.  And at the subsequent hearing before the ASLB empaneled to initially address the Petition, counsel for Plaintiffs argued that the Board should determine the exemption request is outside the scope of the License Amendment Proceeding so they could challenge it "[i]n court through an APA action." *See* Transcript, ML25045A183 at 15-16.

In an order dated March 31, 2025, the ASLB instead agreed with the NRC Staff.  *See* Memorandum and Order Ruling on Intervention Petitions, ML25090A164.  A majority of the Board concluded the exemption request is within the scope of the License Amendment Proceeding:

> Because section 50.82(a)(2) expressly prohibits that which Applicants seek to accomplish with [two of the license amendment requests at issue in the proceeding]—power operation—an exemption from the regulation is necessary for the NRC to find that the amendment complies with NRC regulations.  In the circumstances presented here, the exemption is necessary to grant the license amendment and thus may be challenged as part of this proceeding.

*Id.* at 43.  The ASLB determined, however, that Plaintiff s had not raised a material issue of law or fact regarding the propriety of the exemption in their hearing request.  Consequently, the ASLB denied Plaintiffs' request for a hearing under the NRC's contention admissibility regulation at 10 CFR § 2.309(f).  *Id.*  at 49-51.  On April 25, 2025, Plaintiffs filed a petition for review of the ASLB decision with the Commission.  *See* Notice of Appeal, ML25115A265.  Plaintiffs asked the Commission to reverse the Board on all counts, including the Board's conclusion that the exemption request is within the scope of the License Amendment Proceeding.  *Id.* at 13-15. Plaintiffs' petition for review remains pending before the Commission.

In the meantime, on July 24, 2025, NRC Staff issued the license amendments at issue, as well as the exemption.  *See* Notification, ML25205A193.  The exemption was subsequently published in the Federal Register.  *See* 90 Fed. Reg. 35737 (July 29, 2025).  The issuance, however, does not decide Plaintiffs' petition for review to the Commission in the License Amendment Proceeding.[6]

On November 14, 2025, Plaintiffs filed in this Court a Complaint for Declaratory and Injunctive Relief.  *See* ECF No. 1.  The gravaman of the Complaint is that the NRC Staff's issuance of the exemption allegedly violates the Atomic Energy Act and the Commission's regulations.  *See id.*, PageID.14-15.  Plaintiffs request a declaration to that effect, as well as an injunction prohibiting approval of the exemption.  *See id.*, PageID.15.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction.  Such challenges "come in two varieties: a facial attack or a factual attack."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).  Relevant here, a factual attack goes beyond the allegations in the complaint, and the Court "may look outside the pleadings to determine whether subject-matter jurisdiction exists."  *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (citing *Cartwright v. Garner,* 751 F.3d 752, 759 (6th Cir.2014)).  Moreover, "where subject matter jurisdiction is challenged under Rule 12(b)(1), as it

---

[6] Under 10 CFR § 50.91(a)(4), an amendment that NRC has determined involves no significant hazards consideration may issue "even if an interested person meeting the provisions for intervention called for in § 2.309 of this chapter has filed a request for a hearing" that remains pending. *See also* 10 CFR § 50.92(c).  In such circumstances, NRC Staff's approval is effective upon issuance, but remains subject to the outcome of the adjudicatory proceeding.

[i]s here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

<u>**ARGUMENT**</u>

I.    **This Court lacks subject-matter jurisdiction because Plaintiffs' challenge to the exemption is governed by the Hobbs Act.**

Plaintiffs' claim is in the wrong court.  Through this lawsuit, Plaintiffs are attempting to litigate the same issue they raised (and that remains pending) at the NRC:  the propriety of HDI's exemption request.  The Hobbs Act and Supreme Court precedent make clear that this issue is subject to judicial review only via a petition to the Court of Appeals.

Under the Hobbs Act, federal courts of appeals have exclusive jurisdiction over challenges to "all final orders" of the NRC "made reviewable by section 2239 of title 42."  *See* 28 U.S.C. § 2342(4).  Section 2239 (also known as Section 189a of the AEA), in turn, provides for judicial review of "any final order entered in any proceeding of the kind specified in subsection (a)"— which includes, as relevant here, "any proceeding . . .  for the granting, suspending, revoking, or amending of any license."  *See* 42 U.S.C. §§ 2239(a)(1), (b)(1).

The Hobbs Act "is to be read broadly."  *Gen. Atomics v. NRC*, 75 F.3d 536, 539 (9th Cir. 1996).  Indeed, the Supreme Court has held that, with the Hobbs Act, "Congress intended to provide for initial court of appeals review of *all* final orders in licensing proceedings . . . ."  *Lorion*, 470 U.S. at 737.  And, "[i]n the absence of specific evidence of contrary congressional intent," the Supreme Court continued, "review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue."  *Id.* at 743.  In other words, not only is the final order in a license amendment proceeding subject to the Hobbs Act, but so is any order "preliminary or ancillary" to the core licensing issue.

To hold otherwise would create "a seemingly irrational bifurcated system" where review of different orders relating to the same licensing action would occur in different courts. *Id.* at 742; *see also id.* at 740 ("One purpose of the Hobbs Act was to avoid the duplication of effort involved in creation of a separate record before the agency and before the district court.").

This specific grant of jurisdiction forecloses any other basis for jurisdiction. "Where Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies." *Honicker v. Hendrie*, 465 F. Supp. 414, 418 (M.D. Tenn. 1979) (quoting *Memphis Tr. Co. v. Bd. of Governors of the Fed. Reserve Sys.*, 584 F.2d 921, 925 (6th Cir. 1978)). As such, courts have consistently held that district courts lack jurisdiction to adjudicate claims that challenge NRC orders through avenues other than the Hobbs Act. *See, e.g.*, *Michigan v. United States*, 994 F.2d 1197, 1204 (6th Cir. 1993) (holding that the district court properly found that Michigan's claim—that NRC's failure to issue supplemental environmental impact statements (EISes) did not comply with NEPA and its regulations—concerned "the EISes' effect on the licensing regulations . . . [and] is, therefore, subject to the judicial review provisions of the Hobbs Act"); *Gen. Atomics*, 75 F.3d at 539 (holding that Hobbs Act applied to NRC order holding non-licensee parent company liable for cleanup costs that were the responsibility of the subsidiary—the actual licensee); *Ctr. for Nuclear Responsibility, Inc. v. NRC*, 586 F. Supp. 579, 580-81 (D.D.C. 1984) (holding that NRC's finding of "no significant hazards consideration" was reviewable only in the court of appeals under the Hobbs Act); *City of West Chi. v. NRC*, 542 F. Supp. 13, 15 (N.D. Ill. 1982) (holding that court of appeals had exclusive jurisdiction under Hobbs Act over claim that license amendment violated NRC regulations, the AEA, due process, and NEPA).

9

That rationale applies where organizations like Plaintiffs challenge NRC decisions relating to licensing decisions even though they do not expressly challenge licensing regulations or the license amendment itself.  For example, in *Citizens Awareness Network, Inc. v. NRC*, 854 F. Supp. 16 (D. Mass 1994), an environmental group sought to enjoin the decommissioning of a nuclear plant after the NRC denied its request for a formal hearing.  The group alleged that the NRC violated NEPA by approving the decommissioning plan without an adequate environmental impact statement.  *Citizens Awareness Network*, 854 F. Supp. at 17.  Noting that "the Supreme Court broadly interpreted [the Hobbs Act's] jurisdictional grant, holding that decisions that are ancillary to licensing decisions may be challenged only in the court of appeals," the district court concluded it lacked jurisdiction because the environmental group was, "in essence, challenging a final order by the NRC in a licensing or related proceeding."  *Id.*

There are few decisions addressing the Hobbs Act in the context of exemptions granted by the NRC, but those that do exist support that it applies to the exemption in this case.  In a situation analogous to the case here, the Ninth Circuit held that it had exclusive jurisdiction under the Hobbs Act to review the NRC's grant of an exemption.  *See San Luis Obispo Mothers for Peace v. NRC*, 100 F.4th 1039 (9th Cir. 2024).  In that case, the utility (PG&E) intended to cease operations of a nuclear plant at the end of its then-current license term.  *Id.* at 1047.  As a result, PG&E did not file a license renewal application within the time period that would allow ongoing operations while the NRC considered the application.  *Id.*  Then, in response to a directive from the California Legislature that it take steps to extend operations, PG&E sought an exemption from the NRC's timely renewal rule to allow continued operations during NRC's review of the license renewal application PG&E eventually filed.  *Id.*  NRC granted the exemption.  *Id.*  Three organizations "concerned with the dangers of nuclear power" petitioned the Ninth Circuit for review of the

exemption.  *Id.* at 1044.  The court held that the Hobbs Act applied to petition.  Even though the exemption did not fall within the license renewal proceeding itself, "the practical consequence of the Decision was to facilitate PG&E's license renewal process and it is therefore incidental [to] the renewal proceeding.  *Id.* at 1053.

In contrast, the Second Circuit found that the Hobbs Act does not apply to a different type of exemption unlike the one at issue here.  *See Brodsky v. NRC*, 578 F.3d 175 (2d Cir. 2009).  There, petitioners challenged a standalone exemption from a fire safety regulation that did not involve a related license amendment request.  *Id.* at 177.  The Second Circuit observed that the exemption could likely be treated as a licensing action because, "under the NRC regulations, little appears to distinguish an exemption from an amendment."  *Id.* at 183.  In the end, however, the court focused on the fact that the NRC itself had not treated the exemption as part of a license amendment proceeding and deferred to the NRC's own characterization of the fire safety exemption as distinct from "the granting suspending, revoking, or amending" of a license.  *Id.*  There was no argument that the exemption at issue was preliminary or ancillary to a licensing proceeding.

Other courts of appeals have not discussed the Hobbs Act in the same depth as *San Luis Obispo*, but have exercised jurisdiction over challenges to NRC exemptions.  The Sixth Circuit, for example, addressed the merits of an exemption relating to the manufacture of a cask for storage of spent nuclear fuel.  *See Kelley v. Selin*, 42 F.3d 1501, 1517 (6th Cir. 1995).  That petition for review, which was filed directly with the Court of Appeals, was consolidated with an appeal from this Court's dismissal of a complaint seeking an injunction to prohibit the NRC from allowing use of that cask.  *Id.* at 1503.  The Court of Appeals held that this Court properly concluded it lacked subject-matter jurisdiction over that action.  *See id.* at 1509 n.2.  Other circuits likewise have reached the merits of exemption orders without questioning their jurisdiction.  *See Massachusetts*

*v. NRC*, 878 F.2d 1516 (1st Cir. 1989) (reviewing exemption and other orders relating to resumption of operations of shutdown nuclear plant); *Commonwealth Edison Co. v. NRC*, 830 F.2d 610 (7th Cir. 1987); *Shoreham-Wading River Cent. Sch. Dist. v. NRC*, 931 F.2d 102 (D.C. Cir. 1991); *see also Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 575–76 (D.C. Cir. 2010) (finding the challenged exemptions were more properly considered license amendments and therefore fell within the ambit of the Hobbs Act).

The framework formed by these decisions is that there is no *per se* rule for exemptions,[7] but instead a case-by-case inquiry.  Context matters.  Some exemptions "bear no direct relationship to another license-related proceeding," while others "may related directly to licensing proceedings."  *San Luis Obispo*, 100 F.4th 1052. For example, *Lorion* and *San Luis Obispo* both resolved "issues preliminary or ancillary to the core issue in a [Hobbs Act]-enumerated proceeding."  *Id.* (quoting *Lorion*, 470 U.S. at 743.

The question of where the exemption in this case fits is straightforward for three reasons.  First, the Complaint itself directly links the exemption to the License Amendment Proceeding.  Second, Plaintiffs actually raised their arguments about the exemption in the License Amendment Proceeding.  And, finally, the ASLB decided that issues relating to the exemption are within the scope of the License Amendment Proceeding.

The face of the Complaint itself demonstrates that Plaintiffs' claim is subject to the Hobbs Act.  Specifically, Plaintiffs' allegations acknowledge that the exemption is "preliminary or ancillary" to a license amendment proceeding:  "Granting of the exemption would allow Holtec to

---

[7] "*Brodsky* is not to the contrary."  *San Luis Obispo*, 100 F.4th at 1051 n.5.  *Brodsky* rejected the bright-line rule that an exemption is always an order "granting, suspending, revoking, or amending of any license."  In this case, Hobbs Act jurisdiction exists because the exemption is ancillary or incidental to the "core issue" of a license amendment proceeding.

submit a series of requests to amend its NRC operating license . . . ."  ECF No. 1, PageID.3 ¶ 6.
And, in arguing that the exemption irreparably injures them, Plaintiffs point to the actual restart of
operations, which they acknowledge is dependent on both the exemption and the license
amendments.  *See id.* at PageID 15 ("In this case, Plaintiffs have suffered the irreparable injury of
having a dangerous nuclear plant allowed to restart . . . .").  In other words, just as PG&E sought
an exemption from the timely renewal deadline in connection with its license renewal application
so it could continue operations in *San Luis Obispo*, Plaintiffs allege that HDI sought its exemption
to allow NRC Staff to approve license amendments so it can re-commence operations at Palisades.
Accordingly, this Court should reach the same conclusion as the Ninth Circuit:  "the practical
consequence of the [exemption] was to facilitate [HDI]'s license [amendment] process and it is
therefore incidental [to] the [amendment] proceeding.  *San Luis Obispo*, 100 F.4th at 1053.[8]

Even if Plaintiffs' Complaint had not included allegations supporting their view that the
exemption is preliminary, incidental, or ancillary to a licensing action, their conduct before the
Commission certainly does.  Plaintiffs challenged the exemption *in an administrative proceeding*
*regarding HDI's license amendment requests*.  Specifically, Plaintiffs filed their Petition in the
License Amendment Proceeding docket established to address HDI's requested license
amendments.  *See* Petition, ML24284A364.  Therein, Plaintiffs argued that "the NRC's
consideration of [HDI's] Request for Exemption in their estimation comprises a licensing-related
act . . . ."  *Id.* at 28.  And their allegations in that Petition mirror the allegations in their Complaint
here, including being supported by the same declaration from a nuclear engineer.  *See id.* at 30-40;

---

[8] If Plaintiffs are allowed to retreat from these allegations and argue that the exemption is
not directly related to the license amendment, then it also undermines their standing arguments,
which are based on the ultimate restart of Palisades, and not on any independent significance of
the exemption itself, which only authorizes withdrawal of the certifications of permanent shutdown
and defueling.

ECF No. 2-2, PageID.91-152.  These facts support that the Court lacks jurisdiction over Plaintiff's arguments regarding the exemption because they have raised the same issues in a proceeding that is itself subject to the Hobbs Act.  *See Pub. Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 763 (9th Cir. 2020) (concluding that plaintiff's decision to file a petition with the NRC that addressed the same conduct as its district court action "reinforces our conclusion that the district court did not have subject-matter jurisdiction over [plaintiff's] APA claim"); *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 347 (1st Cir. 2004) ("We interpret *Lorion* as holding that original jurisdiction in the courts of appeals is proper to review any NRC action that could be cognizable in a petition for review from a proceeding under section 2239.").

Not only did Plaintiffs raise their arguments about the exemption in the License Amendment Proceeding, but the ASLB expressly concluded that the exemption was within the scope of the proceeding.  According to the Board's decision on the Petition, HDI's ultimate goal—power operations—can only be accomplished by the requested license amendments, which themselves cannot be approved by the NRC without the exemption.  Memorandum and Order, ML25090A164 at 43.  Stated differently, the exemption is, by definition, "preliminary" and "ancillary" to the license amendments.  Accordingly, "[i]n the circumstances presented here, the exemption is necessary to grant the license amendment and thus may be challenged as part of this proceeding." *Id.*

Although Plaintiffs' challenge to the exemption would fall within the Hobbs Act even without the ASLB's decision,[9] the Board's order certainly forecloses any other conclusion.

---

[9] The standard for application of the Hobbs Act—whether an order is "preliminary or ancillary" to a license amendment—is a different, and lower, standard than the "inextricably intertwined" test that the NRC applies to hearing requests.  Thus, even if an exemption is not "inextricably intertwined" within a licensing action sufficient to trigger a hearing, it may nonetheless be "preliminary or ancillary" to a licensing action for purposes of Hobbs Act

Plaintiffs tacitly acknowledged as much at the ASLB's hearing on their Petition.  There, they argued that the Board should hold that the exemption is outside the scope of the License Amendment Proceeding because they believe that would allow them to challenge the exemption "[i]n court through an APA action."  Transcript, ML25045A183 at 15-16.  The ASLB's contrary conclusion—i.e., that the exemption falls within the more stringent "inextricably intertwined" standard for NRC hearing requests— makes analysis under the "preliminary or ancillary" standard even easier.  *See Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 575-76 (D.C. Cir. 2010) ("*Lorion* controls here.  The Commission has treated Honeywell's exemptions . . . as an amendment to its Source Materials License, bringing Honeywell's petition for review within the ambit of the Hobbs Act . . . ."); *accord Brodsky*, 578 F.3d at 183 (deferring to the NRC's characterization of the fire safety exemption as distinct from a licensing proceeding).

Moreover, because the Board has concluded that the exemption is within the scope of the License Amendment Proceeding and that issue is now on appeal to the Commission itself, "basic principles of administrative law also support [the] decision to allow the NRC to first address" Plaintiffs' argument.  *Pub. Watchdogs*, 984 F.3d at 763 ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." (citing *Parisi v. Davidson*, 405 U.S. 34, 37 (1972)).

---

jurisdiction. *See Kelly*, 42 F.3d at 1517 (addressing exemption, but also recognizing that "the grant of an exemption from a generic requirement does not constitute an amendment to the reactor's license that would trigger hearing rights"); *San Luis Obispo*, 100 F.4th at 1049 ("Congress decided on the scope of judicial review . . . solely by reference to the subject matter of the [NRC] action and not by reference to the procedural particulars of the [NRC] action." (quoting *Lorion*, 470 U.S. at 739)).  The ASLB, of course, found that the exemption even meets that more stringent "inextricably intertwined" test.

The Complaint in this case omits much of how we got here.  But, again, context matters. The history of this issue—including Plaintiffs' own Petition raising the same issues in the License Amendment Proceeding and the ASLB's Memorandum and Order finding those issues to be within the scope of that proceeding—plainly funnels it directly into the Hobbs Act.  Plaintiffs' invocation of federal question jurisdiction under 28 U.S.C. § 1331 (*see* ECF No. 1, PageID.3 ¶¶ 8-9) cannot circumvent the exclusive jurisdiction of the court of appeals.  *See Honicker*, 465 F. Supp. at 418 ("This exclusive statutory review mechanism also prevents plaintiff from following other avenues of so-called 'nonstatutory review' of administrative action in this court by invoking general jurisdictional statutes such as 28 U.S.C. s 1331 or s 1361. Nonstatutory review is available only in the absence of a specific statute authorizing review in a particular court.").

## CONCLUSION

Plaintiffs' Complaint is in the wrong court. Because the exemption is preliminary or ancillary to a licensing action—indeed, within the scope of a pending license amendment proceeding—the Court of Appeals has exclusive jurisdiction over Plaintiffs' challenge.  This Court must therefore dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction.

Dated: February 13, 2026

*/s/ Jason B. Tompkins*
Jason B. Tompkins
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, Alabama 35203
(205) 226-8743

Aaron M. Phelps (P64790)
Kyle P. Konwinski (P76257)
Neil E. Youngdahl (P82452)
Kylee R. Nemetz (P85425)
VARNUM LLP
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

amphelps@varnumlaw.com
kpkonwinski@varnumlaw.com
neyoungdahl@varnumlaw.com
krnemetz@varnumlaw.com

*Attorneys for Defendant, Holtec Decommissioning International, LLC*