UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEYOND NUCLEAR, et al.,

      Plaintiffs,

                                  Case No. 1:25-cv-1463

v.

                                  Hon. Hala Y. Jarbou

U.S. NUCLEAR REGULATORY
COMMISSION and HOLTEC
DECOMMISSIONING
INTERNATIONAL, LLC,

      Defendants.
_____/

## OPINION AND ORDER GRANTING MOTIONS TO DISMISS

Just four years after the Palisades Nuclear Generating Station entered decommissioning, the reactor is on track to be the first returned to operational status in United States history. Three environmental organizations—Beyond Nuclear, Don't Waste Michigan, and Michigan Safe Energy Future—filed this suit to stop the restart. They allege that the Nuclear Regulatory Commission (NRC) unlawfully exempted Holtec Decommissioning International, Palisades' owner, from complying with the agency's decommissioning regulations. The Commission and Holtec now move to dismiss the complaint on the ground that Plaintiffs may obtain review of the exemption only in a court of appeals. The Court agrees, so Defendants' motions will be granted and this action dismissed.

### I.    BACKGROUND

Sitting on the shores of Lake Michigan, the Palisades nuclear plant began commercial operations in the 1970s after receiving a provisional license from the Atomic Energy Commission

(to which the NRC is a partial successor).[1]  The plant generated power for over forty years until its operator Entergy decided to take the plant offline in 2016.  Entergy certified that all nuclear fuel was removed from the plant in June 2022, as required by NRC regulations.[2]  Shortly thereafter, Entergy's operating license was transferred to Holtec Decommissioning, which acquired the plant with the aim of shuttering it.[3]

Holtec's plans soon shifted.  Shortly before Palisades ceased operations, Michigan governor Gretchen Whitmer sought federal funding to keep the plant open, citing the importance of nuclear power to achieving the state's emissions-reductions goals.[4]  With the governor's encouragement, Holtec submitted "a regulatory path for the reauthorization of power operations at" Palisades to the Commission in February 2023.[5]  A cornerstone of the restart plan, the first of its kind in U.S. history,[6] was Holtec's request for an exemption from the Commission's decommissioning regulations, *see* 10 C.F.R. § 50.82(a)(2) (2025), which both Holtec and the Commission understand to mandate the permanent cessation of power generation at a decommissioned plant absent an exemption.[7]  In September 2023, Holtec submitted an exemption

---

[1] *See Palisades Nuclear Plant*, Nuclear Regulatory Commission (June 1, 2026), https://www.nrc.gov/info-finder/reactors/pali [https://perma.cc/8MMV-EPYD].  "[A]ll the licensing and related regulatory functions" of the AEC were transferred to the NRC by the Energy Reorganization Act of 1974, Pub. L. No. 93-438, § 201(f), 88 Stat. 1233, 1243 (codified at 42 U.S.C. § 5841(f)).

[2] *See* Letter from Darrell Corbin, Entergy Corp., to U.S. Nuclear Regul. Comm'n (June 13, 2022), https://www.nrc.gov/docs/ML2216/ML22164A067.pdf

[3] Letter from Scott Wall, U.S. Nuclear Regul. Comm'n, to Pierre Paul Oneid, Holtec Int'l, and Kelly Trice, Holtec Decommissioning Int'l (June 28, 2022), https://www.nrc.gov/docs/ML2217/ML22173A173.pdf.

[4] Jason Hayes, *Gov. Whitmer Supports the Palisades Nuclear Plant*, Mackinac Center for Public Policy (Apr. 22, 2022), https://www.mackinac.org/blog/2022/so-now-gov-whitmer-supports-the-palisades-nuclear-plant [https://perma.cc/XF3D-X5TD].

[5] Letter from Jean Fleming, Holtec International, to Bo Pham, U.S. Nuclear Regul. Comm'n 1 (Feb. 1, 2023), https://www.nrc.gov/docs/ML2303/ML23032A399.pdf.

[6] Jacob Robertson, *Restarting the Palisades Nuclear Plant and Keeping Momentum on Clean Energy*, Federation of American Scientists (Apr. 11, 2024), https://fas.org/publication/palisades-restart-finance/ [https://perma.cc/7KUD-5Z49].

[7] Palisades Energy, LLC; Palisades Nuclear Plant; Exemption, 90 Fed. Reg. 35737, 35739 (July 29, 2025).

request, the first of a set of regulatory petitions aiming at unwinding Palisades' decommissioning and resuming generation activities.[8]  Holtec followed up the request with applications to amend the Palisades operating license to remove all changes made when the plant was decommissioned and to transfer the operating license to a different Holtec subsidiary, as well as a number of minor and conforming amendments.[9]

A year later, the Commission announced that it was considering Holtec's licensing applications and invited interested parties to request a hearing.[10]  Plaintiffs and other opponents of the restart project took up the Commission's offer.[11]  In September 2024, the Commission referred the hearing request to a panel of the Atomic Safety and Licensing Board (ASLB) for further proceedings.[12]  The following March, the ASLB panel rejected the hearing request because it found that the petitioners' contentions were inadmissible.[13]  *Holtec Decommissioning Int'l, LLC*, 101

---

[8] Letter from Jean Fleming, Holtec International, to U.S. Nuclear Regul. Comm'n (Sep. 28, 2023), https://www.nrc.gov/docs/ML2327/ML23271A140.pdf.

[9] *See* Letter from Jean Fleming, Holtec Int'l, to U.S. Nuclear Regul. Comm'n (Dec. 3, 2023), https://www.nrc.gov /docs/ML2334/ML23340A161.pdf; Letter from Jean Fleming, Holtec Int'l, to U.S. Nuclear Regul. Comm'n (Dec. 14, 2023), https://www.nrc.gov/docs/ML2334/ML23348A148.pdf; *see also* U.S. Nuclear Regul. Comm'n, Summary of August 29, 2023, Meeting with Holtec Decommissioning International, LLC 1 (2023), https://www.nrc.gov /docs/ML2326/ML23263A001.pdf (describing planned actions as including applications for "amendments to update the operating license, the technical specifications, environmental protection plan, administrative requirements, and the emergency plan" and requests for "recission of exemptions that would no longer be applicable").

[10] Holtec Decommissioning International, LLC, and Holtec Palisades, LLC; Palisades Nuclear Plant; Applications for Amendments to Renewed Facility Operating License Involving Proposed No Significant Hazards Considerations and Order Imposing Procedures for Access to Sensitive Unclassified Non-Safeguards Information and Safeguards Information, 89 Fed. Reg. 64486 (Aug. 7, 2024) [hereinafter Holtec Applications Notice].

[11] Petition to Intervene and Request for Adjudicatory Hearing by Beyond Nuclear, Don't Waste Michigan, Michigan Safe Energy Future, Three Mile Island Alert, and Nuclear Energy Information Service, *Holtec Decommissioning Int'l, LLC*, No. 50-255 (N.R.C. Oct. 7, 2024), https://www.nrc.gov/docs/ML2428/ML24284A364.pdf.  The Commission noted that it was not providing a separate hearing opportunity on the exemption request, *see* Holtec Applications Notice, 89 Fed. Reg. at 64487, but its secretary later clarified that objections to the exemption could be raised as part of the request for a hearing on the license amendments, *see* Order, *Holtec Decommissioning Int'l, LLC*, No. 50-255 (N.R.C. Sep. 26, 2024), https://www.nrc.gov/docs/ML2427/ML24270A263.pdf.

[12] Establishment of Atomic Safety and Licensing Board; Holtec Decommissioning International, LLC, and Holtec Palisades, LLC, 89 Fed. Reg. 77546 (Sep. 23, 2024); Memo. & Order, *Holtec Decommissioning Int'l, LLC*, No. 50-255-LA-3 (A.S.L.B. Oct. 17, 2024), https://www.nrc.gov/docs/ML2429/ML24291A105.pdf.

[13] In NRC parlance, a "contention" is a "specific statement of the issue of law or fact to be raised or controverted." *Public Involvement in Hearings*, Nuclear Regulatory Commission (Feb. 13, 2026), https://www.nrc.gov/about-

N.R.C. 141, 157–58 (2025).   Not long after, the Commission exempted Holtec from the decommissioning regulations and amended its operating licenses, removing the most significant regulatory barriers to the resumption of power operations at the Palisades plant.[14]   Plaintiffs filed the instant suit in November 2025, seeking a declaration that the exemption was arbitrary, capricious, or contrary to law and an injunction prohibiting the Commission from approving the exemption request.   (ECF No. 1 at 15.)   Defendants moved to dismiss the complaint on jurisdictional grounds in February.  (ECF Nos. 15, 20.)  The motions are now fully briefed.  (ECF Nos. 25, 33, 34.)

## II.    LEGAL STANDARD

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction.   A "facial attack" on subject matter jurisdiction, like the one mounted by Defendants, "merely questions the sufficiency of the" complaint's jurisdictional allegations.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).   Facial attacks are therefore reviewed under the same standard as applied to a Rule 12(b)(6) motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint.  *Id.*

## III.    ANALYSIS

Defendants seek dismissal on two grounds.   They contend this Court lacks jurisdiction because the Administrative Orders Review Act, better known as the Hobbs Act, channels review of the Commission's exemption of Holtec from the decommissioning regulations to the courts of appeals.   In the alternative, they argue Plaintiffs' action is premature because they have not

---

nrc/regulatory/adjudicatory/hearing [https://perma.cc/F2F3-WK9C].  Contentions that do not satisfy the requirements set out in the Commission's rules of practice, *see* 10 C.F.R. § 2.309(f), are inadmissible.

[14] Palisades Energy, LLC; Palisades Nuclear Plant; Exemption, 90 Fed. Reg. at 35738.

exhausted their administrative remedies and because the administrative process has not reached finality.  Plaintiffs resist these contentions by pointing to the absence of exemptions from the statutory provision listing those Commission orders subject to Hobbs Act review, *see* 42 U.S.C. § 2239(a), and to the formal difference between the exemption on the one hand and Plaintiffs' (then-)pending appeal from the denial of their hearing request on the other.[15]

The Court's analysis begins and ends with jurisdiction.  Federal district courts enjoy only that jurisdiction conferred upon them by legislative pronouncement.  *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940).  Congress vested the district courts with jurisdiction over all cases arising under federal law by enacting what is now 28 U.S.C. § 1331. *See* Fallon et al., Hart and Weschler's The Federal Courts and the Federal System 779–83 (7th ed. 2015).  But what Congress gives, it can take away.  It has done so repeatedly with respect to challenges to final administrative action, which typically must be brought by way of petition to a court of appeals.  *See, e.g.*, 29 U.S.C. § 160 (final orders of the NLRB); 15 U.S.C. § 78y (final orders and rules of the SEC); 42 U.S.C. § 7607(b) (final action by the EPA).[16]  The question on which this case turns is whether the same is true of challenges to exemptions the Commission grants from its licensing regulations.  Text, judicial construction, and administrative practice all indicate that it is.

The relevant statutory provisions seem to point in the opposite direction.  The Hobbs Act states that the courts of appeals have "exclusive jurisdiction" over "all final orders of the Atomic Energy Commission made reviewable by" § 2239.  28 U.S.C. § 2342.  Section 2239(b) in turn

---

[15] The Commission recently affirmed the ASLB panel's denial of Plaintiffs' hearing request.  *See Holtec Decommissioning Int'l, LLC*, No. 50-255 LA-3 (N.R.C. June 15, 2026), https://www.nrc.gov/docs/ML2616 /ML26166A391.pdf.

[16] *See generally* Hickman & Pierce, Administrative Law Treatise § 20.5, VitalLaw (database updated Nov. 2025) (discussing intricacies of evaluating statutory review schemes).

provides that "[a]ny final order entered in any proceeding of the kind specified in subsection (a)" of the same statute is subject to the Hobbs Act.  On its face, § 2239(a) does not encompass exemptions under 10 C.F.R. § 50.12: it brings within its ambit "any proceeding . . . for the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control," as well as other actions not pertinent here.  The word "exemption" appears not once in the entirety of the subsection.

Plaintiffs would have that be the end of the matter.  There can be no doubt that the courts are without license to depart from a statute's plain meaning.  *Perrin v. United States*, 444 U.S. 37, 42 (1979).[17]  That was the ground of decision in *Brodsky v. NRC*, which inferred from Congress's not having added exemptions to § 2239 since the NRC regulation was promulgated in 1956 that the legislature did not intend for challenges to exemptions to go through Hobbs Act review.  578 F.3d 175, 180, 181 (2d Cir. 2009).  A related difficulty is presented by the provision of the Hobbs Act limiting review to a "party aggrieved by the final order" of an agency.  28 U.S.C. § 2344.  The Supreme Court recently interpreted this language as permitting only those who are parties to a license proceeding to petition a court of appeals for review of a final Commission order.  *See NRC v. Texas*, 605 U.S. 665, 675–78 (2025).  If the Commission does not treat exemption requests as license proceedings, it follows that Plaintiffs could not become party to them, foreclosing review under the Hobbs Act.  *Cf. Ohio Nuclear-Free Network v. NRC*, 53 F.4th 236, 240 (D.C. Cir. 2022) (status as aggrieved party depends on whether litigant availed themselves of "the appropriate and available administrative procedure").  Both potential barriers to Hobbs Act review turn on the same

---

[17] *See also* Basile, *Ordinary Meaning and Plain Meaning*, 110 Va. L. Rev. 135, 156–58, 166–68, 176–84 (2024) (distinguishing between ordinary meaning as starting point of textual analysis and plain meaning as presumption that clear meaning controls).

interpretive question: whether Holtec's exemption request can be characterized as part of a licensing proceeding within the meaning of § 2239.

The answer to this question depends on the sense to be given to subsection (b)'s authorization of judicial review of "[a]ny final order entered in any proceeding of the kind specified in subsection (a)." Plaintiffs favor a restrictive construal limited to final orders "granting, suspending, revoking, or amending . . . any license" (again, setting aside other regulatory actions not relevant here). But this interpretation reads the term "proceeding" out of subsection (b). A proceeding for amending a license, for example, may culminate in an order allowing the amendment. But it may also result in an order refusing to hold a hearing on the amendment request at the instance of a concerned citizen, or even an order excusing the amendment-seeker's noncompliance with a formality of procedure. All three cases involve a final order "entered" in a licensing proceeding, plausibly bringing them within the scope of subsection (b). Limiting that provision's reach to orders adjudicating the status of the license proper deprives the phrase "entered in any proceeding" of independent significance. When faced with two defensible readings of a statute, that reading which does not reduce any of the statute's language to surplusage is preferred. *See* Garner & Scalia, Reading Law 174–79 (2012) (discussing the surplusage canon). On textual grounds alone, then, there is reason to doubt that Plaintiffs' proffered interpretation of § 2239 is the best one.

Cutting more strongly against Plaintiffs' textual argument is the Supreme Court's reading of § 2239 in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985). *Lorion* held that an order by the Commission denying a request to modify, suspend, or revoke a license is an order in a licensing proceeding reviewable only by way of the Hobbs Act. *Id.* at 746. Although the main interpretive issue confronting the Court was whether review under § 2239(b) is limited to

proceedings in which the Commission holds a hearing, its understanding of subsection (a) as encompassing the *refusal* to institute a license-revocation proceeding supports reading the statute to reach more than final orders on licensing requests. *See id.* at 745 n.11. This suggestion is reinforced by *Lorion*'s invocation of the principle that "orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue." *Id.* at 743. The exclusion of ancillary Commission orders from the Hobbs Act's purview, the Court reasoned, would lead to duplicative and bifurcated judicial review, a result the Court regarded as "implausible." *Id.* at 742. Taken together, both *Lorion*'s holding and the reasons given in its support favor a more expansive understanding of the class of orders that § 2239 subjects to Hobbs Act review.

There is admittedly some force to Plaintiffs' objection that the exemption at issue here is not "preliminary or ancillary" to the license amendment in the sense *Lorion* uses those terms. The examples of preliminary or ancillary orders *Lorion* pointed to were those "denying requests for intervention or a hearing by persons who purport to be affected by the issues in [a] proceeding." *Id.* Orders of that sort are straightforwardly "preliminary" to license-amendment proceedings insofar as they arise in those very same proceedings and concern denial of permission to participate in them. An order granting an exemption from the Commission's decommissioning regulations, by contrast, is not inherently "preliminary or ancillary" to a license-amendment proceeding. Although both the exemption and the amendment are necessary conditions for resumption of power generation, neither is obviously prior to the other as a temporal or logical matter.[18] In principle, it seems the Commission could have resolved all issues posed by Holtec's amendment

---

[18] A related point was pressed by one of the members of the ASLB panel, who argued in a concurrence that it was the agency's staff that had linked the exemption and the license amendments. *Holtec Decommissioning Int'l*, 101 N.R.C. at 191 (Arnold, J., concurring).

requests and granted the amendments before ruling on the exemption request.  By contrast, the Commission could not grant a request to intervene in a proceeding after the proceeding's conclusion.

Plaintiffs' argument treats the language used in *Lorion* far too literally.  *See Brown v. Davenport*, 596 U.S. 118, 141 (2022) (explaining that opinions should not be read like statutes). An order that is not strictly "preliminary or ancillary" to a licensing proceeding is not necessarily outside *Lorion*'s rationale.  *Lorion*'s rule is functional in nature: the inquiry it prescribes is one into the practical relatedness between the "core issue" resolved in a licensing proceeding and the other issues review of which is sought.  Nothing in *Lorion* suggests that only procedural decisions—like the denial of the citizen petition with which the Court was concerned—can accompany a challenge to the outcome of a license proceeding in a court of appeals.  Challenges to exemptions granted in connection with a licensing proceeding also raise the specter of the bifurcation and duplication the *Lorion* Court found so objectionable, particularly when the validity of the exemption cannot be assessed apart from the merits of the decision on the licensing request. Should Plaintiffs be permitted to bring their challenge to Holtec's exemption from the decommissioning regulations in this Court, the Court will need to evaluate the consistency of the exemption with the "underlying purpose" of the regulations.  *See* 10 C.F.R. § 50.12(a)(2)(ii).  But if the Commission can lawfully excise the post-shutdown amendments to an operating license so as to permit the resumption of power generation, it is unlikely that the Commission intended the decommissioning regulations to independently bar restarting a plant.  The Commission's authority to allow such amendments was a core issue raised by Plaintiffs in the license proceeding.  *See Holtec Decommissioning*, 101 N.R.C. at 177–78.  To allow Plaintiffs to raise it in this Court too threatens the very duplication that *Lorion* was at pains to avoid.  *Lorion*'s spirit, if not its letter,

counsels in favor of Hobbs Act review of exemptions as closely bound up with license proceedings as the exemption at issue in this case.

Additional support for this conclusion is provided by cases extending *Lorion* to Commission action related to licensing proceedings.  In *Citizens Awareness Network, Inc. v. United States*, the First Circuit relied on *Lorion*'s reasoning to conclude that it had jurisdiction to review a rule promulgated by the Commission notwithstanding the limitation of § 2239(b) review to "any final order."  391 F.3d 338, 347 (1st Cir. 2004).  More recently, in a case with significant similarities to this one, the Ninth Circuit rejected the Commission's suggestion that an exemption must be "the first step in a process that will culminate" in a license proceeding to fall within the scope of *Lorion*'s rule.  *See San Luis Obispo Mothers for Peace v. NRC*, 100 F.4th 1039, 1053 (9th Cir. 2024) (cleaned up) (quoting *Lorion*, 470 U.S. at 745 n.11).  The court emphasized that the "basic principles respecting the allocation of judicial review of agency action" invoked in *Lorion* do not turn on the "formal legal relationship between two proceedings" but on "the practical consequence" of one agency action on the other.  *Id.* (quoting *Lorion*, 470 U.S. at 746).  It also noted that the bifurcation and duplication of review that *Lorion* found unpalatable would also arise from directing challenges to exemptions to district courts while allowing identical challenges to come before the appeals courts through parallel agency procedures.  The court ultimately concluded that under the circumstances before it, the challenged exemption, which had "the almost guaranteed practical impact of extending operations at" a nuclear plant undergoing decommissioning, was "ancillary or incidental" to the proceedings for renewing the plant's license.  *Id.*

The Court finds the broader reading of *Lorion* adopted by the Ninth Circuit helpful to resolving the jurisdictional quandary before it.  The nature of the Commission's exemption, and

the circumstances under which Holtec sought it, leave little doubt that the exemption is practically bound up with the proceedings for amending Holtec's operating license.  The exemption had no real-world significance on its own.  All it did was allow Holtec to retract the certifications made under 10 C.F.R. § 50.82(a)(1) that the Palisades plant had been fully decommissioned.  As the Commission remarked in the notice it published in the Federal Register, its "approval of this exemption [wa]s not sufficient to authorize operation" of the Palisades plant but was merely "a necessary part of . . . restor[ing] . . . the [Palisades] power operations licensing basis."[19] Consistent with this understanding of the exemption's significance, the agency did not evaluate the exemption in isolation from Holtec's proposed license amendments; instead, it "concurrently reviewed and approved the transfer of operating authority and the license amendment requests associated with restoring the power operations licensing basis" at the Palisades plant.[20]   The Commission's treatment of the exemption request as part and parcel of the license amendments, in conjunction with the exemption's lacking independent significance, justify regarding the exemption as bound up with the license proceedings for purposes of judicial review.

The Commission's procedures for handling challenges to exemption requests further reinforce the broader interpretation of § 2239 adopted here.  Not only is administrative practice a guide to the statute's meaning, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024), it also shapes the appropriate forum for judicial review, as illustrated by the foreclosure of Hobbs Act review caused by the denial of party status in *NRC v. Texas*.  *See* 605 U.S. at 679–80 ("[A] person who has not successfully intervened before the Commission may not, as a nonparty, bring a Hobbs Act suit contesting the merits of orders issued in the underlying Commission

---

[19] Palisades Energy, LLC; Palisades Nuclear Plant; Exemption, 90 Fed. Reg. 35737, 35737 (July 29, 2025).

[20] *Id.* at 35739.

proceeding."). According to the Commission, § 2239 generally does not encompass exemption requests. *See Entergy Nuclear Ops., Inc.*, 96 N.R.C. 1, 14 (2022). But it has long been of the view that an exemption request that is "inextricably intertwined" with one of the licensing actions provided for in § 2239 falls within the statute's scope. *Vermont Yankee Nuclear Power Station*, 83 N.R.C. 542, 553 (2016). On the basis of this interpretation of § 2239, the Commission has allowed objectors to exemption requests to seek a hearing on that issue in a licensing proceeding if the license change and the exemption are, "in essence, two parts of the same action." *Id.*

The *Vermont Yankee* proceeding is illustrative. Entergy, while decommissioning the Vermont Yankee nuclear power plant, sought exemptions from emergency planning regulations in conjunction with license amendments "that would implement the exemptions, if approved." *Id.* at 545. The State of Vermont challenged both applications and sought a hearing on them. A panel of the Atomic Safety and Licensing Board denied the request for a hearing on the exemption request on the grounds that the exemption was not within the scope of the license-amendment application. The Commission ruled that the ASLB decision was error because the exemption request and amendment application were intertwined, reasoning that a "license amendment application alone, based on the language and structure of the regulations as presently written, would not be sufficient to accomplish" the operator's "goal of reducing the scope of its emergency plan." *Id.* at 552.

This case is on all fours with *Vermont Yankee*. Holtec's proposed amendments to the Palisades license—eliminating all provisions decommissioning the plant—cannot be granted unless it is exempted from § 50.82. Here too, a license amendment alone "would not be sufficient to accomplish" Holtec's goal of restarting power generation at Palisades. It is for this reason that the ASLB panel allowed Plaintiffs and their fellow opponents of the Palisades restart project to

request a hearing on the propriety of Holtec's exemption request as part of the license-amendment proceedings. *Holtec Decommissioning*, 101 N.R.C. at 170–71. Although the Commission's interpretation of § 2239 is concerned with the circumstances under which an exemption request can be the subject of a hearing under subsection (a), its determination that an exemption merges into a licensing proceeding to which it is closely related for hearing purposes applies with equal force to subsection (b)'s judicial-review provision. Moreover, to the extent that agency procedures can determine the proper venue for judicial review, *see Ohio Nuclear-Free Network*, 53 F.4th at 240, the fact that the Commission permits challenges to exemptions to be raised in connection with licensing proceedings weighs in favor of channeling review of all aspects of such a "mixed" proceeding to the courts of appeals, lest the bifurcation *Lorion* sought to avoid come to pass.

Taken together, the text of § 2239, and its interpretation by the courts and the Commission, justify the conclusion that § 2239 channels review of exemptions closely related to a licensing proceeding to the courts of appeals. Because the exemption Plaintiffs wish to challenge is one of those closely related orders, they may only obtain judicial review through a petition to a court of appeals challenging the Commission's adverse decision on their hearing request.[21]

## IV.    CONCLUSION

The Court finds that the Atomic Energy Act and the Hobbs Act together vest exclusive jurisdiction over challenges to the exemption the Commission granted to Holtec from the Commission's decommissioning regulations in the courts of appeals. The Court therefore

---

[21] See *Holtec Decommissioning Int'l, LLC*, No. 50-255 LA-3 (N.R.C. June 15, 2026), https://www.nrc.gov/docs/ML2616/ML26166A391.pdf.

concludes that it lacks the authority to entertain this suit.  Accordingly, Plaintiffs' suit will be dismissed without prejudice.

**IT IS ORDERED** that Defendants' motions to dismiss (ECF Nos. 15, 20) are **GRANTED**.

A judgment consistent with this Opinion and Order shall issue.


Dated: June 26, 2026             /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 CHIEF UNITED STATES DISTRICT JUDGE